**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**ALTISSIMA LIMITED,**

                              **Plaintiff,**

           **- vs -**                                    **Civil Action No. 08-cv-0756(C)**

**ONE NIAGARA LLC, ONE NIAGARA PLAZA, LLC,**
**ONE NIAGARA PLAZA, INC., WHITESTAR**
**DEVELOPMENT CORPORATION, FRANK**
**PARLATO, JR., REGER INVESTMENT FUND,**
**LLLP, f/k/a REGER INVESTMENT FUND LTD.,**
**TOURIST SERVICES, LLC, LAWRENCE REGER,**
**GORDON REGER and JOHN DOES 1 AND 2,**

                              **Defendants.**

---

_____

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR APPOINTMENT**
**OF TEMPORARY RECEIVER**
_____

                              **JAECKLE FLEISCHMANN** & **MUGEL, LLP**
                              Mitchell J. Banas, Jr., Esq**.**
                              *Attorneys for Plaintiff*
                              *Altissima Limited*
                              12 Fountain Plaza
                              Buffalo, New York 14202-2292
                              (716) 856-0600

## PRELIMINARY STATEMENT

Plaintiff Altissima Limited ("Altissima") submits this memorandum of law in support of its motion to appoint a temporary receiver pursuant to the terms of its first mortgage, which entitles the holder to appoint a receiver without notice in the event of a default, and CPLR 6401, which allows the appointment of a receiver where property is in harm's way.  Plaintiff respectfully requests that this Court appoint a receiver so as to prevent further impairment of its interest in the subject property.

It is proper for a court to grant a temporary receiver where the mortgage authorizes such appointment and the mortgagor defaults on the mortgaged premises.  Further, CPLR 6401(a) provides that a temporary receiver may be appointed to preserve property that is the subject of litigation if it is in danger of being materially harmed or destroyed.  Altissima has demonstrated that the appointment of a temporary receiver is an appropriate remedy and that it is necessary in order to protect its substantial mortgage interest in the property and to prevent further damage and decline in its value.

## FACTS

For a full recitation of the facts, Altissima respectfully directs this court to Shmuel Shmueli's accompanying Declaration in Support of Plaintiff's Motion for Appointment of Temporary Receiver (the "Shmueli Declaration").  The same defined terms are used herein as are used in the Shmueli Declaration.

## ARGUMENT

## POINT I

### A Temporary Receiver Should Be Appointed to Collect Rent and Other Income While the Instant Action Is Pending

Pursuant to the terms of its Mortgage, Altissima is entitled to the appointment of a receiver as a contractual remedy.  The Mortgage provides, in pertinent part, that the holder thereof may "obtain the appointment of a receiver of rents and profits without notice . . . for the purpose of preserving the [Property], preventing waste and to protect all rights accruing to [the mortgagee] by virtue of th[e] mortgage . . . whether or not in connection with an action to foreclose th[e] mortgage."  Shmueli Declaration Exhibit A, §5.4 at 10-11.

The appointment of a receiver as a contractual remedy does not require the same showing as the appointment of a receiver as a provisional remedy.  In order to appoint a receiver pursuant to a contractual right, the movant need only demonstrate that the conditions precedent set forth in the mortgage contract have been met.  Under New York law, even the *ex parte* appointment of a receiver is permissible if a contract between the parties calls for it.  Siegel, N.Y. Practice, §333 (4th ed. 2007).

It is entirely appropriate for a mortgage holder to seek the appointment of a receiver where the mortgage authorizes such appointment.  *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. N.Y. 1988).  While a court may retain the ultimate discretion to deny an application to appoint a receiver in the absence of a reasonable basis to do so, a court is "generally bound to appoint receivers when they are provided for by a contract between the parties."  *Federal Home Loan Mortgage Corp. v. Peetone Properties, Inc.,* 1990 U.S. Dist. LEXIS 2404, *3 (S.D.N.Y. 1990); *see also, Federal Loan Mortgage Corp. v. Green,* 1990 U.S.

Dist. LEXIS 4952, *3 (S.D.N.Y. 1990) (defendant provided no justification for the court to depart from the terms of an agreement providing for the appointment of a receiver).

Here, the Mortgage clearly and explicitly entitles the holder to the appointment of a receiver in the event of a default. Shmueli Declaration Exhibit A, §5.4 at 10-11. The promissory note which the Mortgage secures is seriously in default, with the principal amount of the Mortgage now at least $6.8 million (in fact, approaching $10 million) by virtue of unpaid interest and other charges. *Id.* at ¶ 16. As such, Altissima is contractually entitled to the appointment of a receiver pursuant to the terms of the Mortgage.

The equities (while not strictly relevant on an application to appoint a receiver as a contractual remedy) also mandate the exercise of this contractual remedy. The Property has generated and will continue to generate revenue well in excess of $1,000,000 annually. One Niagara, however, has entered into a Lease with Tourist Services, a company owned and/or controlled by defendants Parlato and Reger, whereby Tourist Services keeps 75% of the gross revenues generated by the Property, leaving only 25% to One Niagara out of which to pay all taxes and certain other expenses. Shmueli Declaration at ¶ 9 and Exhibit E at §2. This arrangement essentially guarantees that the Property will be operated at a loss, as taxes alone approach that 25%. Shmueli Declaration ¶ 9. The Lease term is five years, but provides extensions for six additional consecutive five-year periods at the tenant's option, **thereby encumbering the Property for up to 35 years**. Shmueli Declaration Exhibit E at §3. Tourist Services' gross revenues derive from various cash-based seasonal tourist operations which sublet portions of the Property. Defendant Parlato, as putative manager of the Property, both takes in 100% of that income as a representative of Tourist Services and then pays 25% of it over to himself as claimed manager of the Property for One Niagara. Shmueli Declaration at ¶ 9. He

has acknowledged that he does not maintain written records of these cash transactions.  Shmueli Declaration at ¶ 18.

Additionally, defendant Parlato has severely diminished the value, marketability and rentability of the Property by gutting the building, removing metal and other fixtures from the upper floors, and removing aluminum louvers which are required for proper functioning of the building's heating system.  Shmueli Declaration at ¶ 11.  As a result of these actions, the building currently has a certificate of occupancy only for the first floor (usable only from April through October), and the remaining space on floors 2 through 9 is unrentable and unusable year round. Shmueli Declaration at ¶ 11 and Exhibit F.

It is clear that the appointment of a receiver is necessary to protect Altissima's mortgage interest in the Property and to prevent further damage to the Property's value and marketability. Moreover, that receiver must be appointed without delay.  The Property's tenant, Tourist Services, will resume its full-scale business operation at the Property as soon as the tourist season begins, and it is essential to have a receiver in place prior to this time, before Parlato again starts taking in cash revenues in his capacity as representative of Tourist Services, keeping 75% of it, and paying the balance over to himself as representative of One Niagara.  The appointment of a temporary receiver, as authorized by the Mortgage, also protects Altissima from further Parlato-caused deterioration of the Property.

## POINT II

### The Appointment of a Temporary Receiver Is Appropriate as a Provisional Remedy to Prevent Further Harm to the Property and Protect Plaintiff's Mortgage Interest

In addition to the Mortgage's remedy, CPLR 6401(a) also authorizes the appointment of a temporary receiver as a provisional remedy when property that is the subject of litigation is in danger of harm, injury or damage and such remedy is necessary to protect the interests of the parties. A receiver may be appointed for any form of identifiable property, including any rents, profits or other income produced therefrom. *See, e.g.*, *Butler v. Gibbons*, 225 A.D.2d 335, 335, 638 N.Y.S.2d 634, 634 (1st Dept. 1996); *Bourke v. Albany Medical Center*, 176 A.D.2d 1028, 1029, 575 N.Y.S.2d 183, 184 (3d Dept. 1991), *appeal dismissed*, 79 N.Y.2d 914, 581 N.Y.S.2d 666 (1992); *Nelson v. Nelson*, 99 A.D.2d 917, 917, 473 N.Y.S.2d 40, 41 (3d Dept. 1984). A moving party seeking the appointment of a temporary receiver as a provisional remedy need only demonstrate that a receiver is necessary to prevent further harm or irreparable loss to the property. *S. Z. B. Corp. v. Ruth*, 14 A.D.2d 678, 678, 219 N.Y.S.2d 889, 890 (1st Dept. 1961). While such remedy may be extraordinary, if clear and convincing evidence demonstrates that receivership is required to conserve the property and to protect the parties and their interests (as here), it is appropriate and just. *Id.; see also Nelson*, *supra*, 99 A.D.2d at 917-18, 473 N.Y.S.2d at 41 (although appointment of a temporary receiver should not be granted lightly, when plaintiff has satisfied its burden it is entitled to such relief, even where an ongoing business is involved; receiver appointed without evidentiary hearing).

Altissima has met this evidentiary burden, demonstrating the necessity of a receiver to protect the Property and to protect its mortgage interest in the Property. In his purported role as property manager, defendant Parlato entered into a facially wasteful and at-best suspect Lease agreement with Tourist Services, a company owned and/or controlled by defendants Parlato and

Reger.  This self-dealing Lease agreement diverts seventy-five percent (75%) of the Property's gross rents and profits for a period of up to 35 years.  The remaining 25% of Tourist Services' gross revenues from the Property which is due as rent is calculated entirely by Parlato as tenant. Prior to entering into this Lease, and continuing up to the present time, Parlato and/or Tourist Services have collected income from the Property in the form of rent and fees from various vendors for use of space in the building and for use of the adjacent parking lot without any oversight whatsoever.  These are primarily cash transactions and Mr. Parlato has wholly failed to account for this income.  Shmueli Declaration at ¶¶ 8, 10, 12, 18, 20.  Despite repeated and recent efforts to do so, Altissima has been unable to reach an agreement with Parlato concerning the effective monitoring and accounting of the cash income being generated at the Property. Shmueli Declaration at ¶ 12.  Altissima is left with no method of ascertaining how much rent and income the building actually generates in order to allow the Mortgage to be paid down and to exercise its Assignment of Rents.  To Altissima's further detriment, the Lease provides that the landlord remains responsible for certain expenses, including taxes which are approximately $1,000 per day.  Shmueli Declaration at ¶ 9.  The entire Lease agreement and the lack of a proper accounting system is inherently adverse and injurious to Altissima's mortgage interest in the property.

    In addition, a receiver is necessary to protect the Property from further harm and decline in value.  Defendants' actions have seriously harmed the physical integrity and value of the building by removing valuable materials and essential components.  This has compromised the efficient operation of the building's heating system and rendered large portions of the building unusable and unrentable.  Due to this physical damage to the building, directly caused by the actions of Parlato, the City of Niagara Falls limited the occupancy of the building to the first floor only, and the lack of an operable heating system makes the building habitable only during

warmer months.  Altissima otherwise lacks sufficient control over the building to prevent any

further removal or injury to the Property.  The appointment of a temporary receiver would halt

further damage and irreparable loss to the building and would protect the value of the assets that

remain in the Property.

**<u>CONCLUSION</u>**

For the foregoing reasons, Altissima respectfully requests this Court to grant its motion

for the appointment of a temporary receiver and such other and further relief as to the Court

seems just and proper.


DATED:   Buffalo, New York
              February 11, 2009


                                                  _/s/ Mitchell J. Banas, Jr._____
                                                  Mitchell J. Banas, Jr.
                                                  **JAECKLE FLEISCHMANN & MUGEL, LLP**
                                                  *Attorneys for Plaintiff*
                                                  12 Fountain Plaza
                                                  Buffalo, NY  14202-2292
                                                  (716) 856-0600
                                                  mbanas@jaeckle.com


879266.6