UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALTISSIMA LIMITED,

                Plaintiff,                **REPORT AND RECOMMENDATION**

v.

                                        08-CV-00756(S)(M)

ONE NIAGARA LLC, et al.,

                Defendants.
_____

        This case has been referred to me for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [64].[1] Before me are the motions of plaintiff Altissima Limited ("Altissima") for discovery sanctions [65, 119, 143], defendants' motion to dismiss for lack of subject matter jurisdiction and on the merits [151], and Altissima's motion for dismissal of defendant One Niagara LLC ("One Niagara") and for leave to further amend its Amended Complaint [161].

        For the following reasons, I recommend that defendants' motion to dismiss be granted for lack of subject matter jurisdiction and otherwise denied, that all of Altissima's motions be denied, and that the case be closed.

## BACKGROUND

        Altissima commenced this action on October 10, 2008, seeking various forms of relief against defendants with respect to a parcel of real property located at 360 Rainbow Boulevard South in the City of Niagara Falls, New York. *See* Complaint [1]. On February 12,

---

[1]     Bracketed references are to CM/ECF docket entries.

2009, Altissima moved for the appointment of a temporary receiver of the property [31], and on March 11, 2009 it moved for discovery sanctions pursuant to Fed. R. Civ. P. ("Rule") 37 [39]. Both motions were denied by Hon. John T. Curtin on May 8, 2009 [56].

On March 3, 2009, defendants moved for summary judgment pursuant to Rule 56 [38]. While that motion attacked Altissima's claims on the merits, it did not question subject matter jurisdiction. That motion was denied, without prejudice, for failure to include a Memorandum of Law or Statement of Undisputed Facts, as required by this Court's Local Rules of Civil Procedure [70, 84].

On June 16, 2009, Altissima moved to amend its Complaint to add a cause of action seeking foreclosure of the Rainbow Boulevard property [59]. Defendants did not oppose that motion, and it was therefore granted [77]. Altissima filed its Amended Complaint containing the foreclosure claim on July 31, 2009 [85, 89], along with a "Notice if Lis Pendens" [87].

On June 24, 2009, Altissima again moved for discovery sanctions pursuant to Rule 37 [65]. That motion was "deferred pending further proceedings" [83]. On September 11, 2009, Altissima moved for an order of attachment and expedited proceedings [109]. That motion was denied [103].

On July 21, 2009 I issued a Case Management Order [79] which provided, *inter alia*, that "all motions to . . . amend the pleadings shall be filed no later than August 10, 2009", and that "no extension of the above cutoff dates will be granted except upon written application, filed prior to the cutoff date, showing good cause for the extension".

A slew of additional motions followed. On September 16, 2009, Altissima filed yet another motion for discovery sanctions pursuant to Rule 37 [119]. On November 3, 2009, defendants moved for a protective order staying further discovery [130]. On November 13, 2009, Altissima moved for discovery sanctions and an order of contempt [143]. On November 30, 2009, defendants moved for summary judgment [151] both on the merits and - for the first time - arguing lack of subject matter jurisdiction.

On December 2, 2009 I issued a Text Order [152] scheduling a conference to discuss the newly-raised issue of subject matter jurisdiction. At that conference, defendants argued that complete diversity of citizenship was lacking because both Altissima and One Niagara are citizens of the British Virgin Islands [159, pp. 13-15]. I invited supplemental briefing on that issue [157], which led Altissima to move for a further amendment of the Amended Complaint to drop One Niagara as a party and eliminate any jurisdictional problem [161].

Defendants' motion to dismiss, and Altissima's motion to amend, were argued before me on January 7, 2010 [176]. Following an additional round of supplemental briefing [177, 179], the motions are now before me for determination.

## ANALYSIS

A.  **Subject Matter Jurisdiction**

"Uncertainty regarding the question of jurisdiction is particularly undesirable, and collateral litigation on the point particularly wasteful." Grupo Dataflux v. Atlas Global, L.P., 541 U.S. 567, 582 (2004). Unfortunately, the examination of applicable precedents yields many

inconsistent and often contradictory statements, which do not make the task of discerning the existence of subject matter jurisdiction an easy one in every case - including this one.

I am not pleased by defendants' failure to raise this issue until over year after this action had been commenced - and then only in the face of multiple motions for sanctions by Altissima. Nevertheless, "a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct . . . . A litigant generally may raise a court's lack of subject-matter jurisdiction at any time." Grupo Dataflux, supra, 541 U.S. at 576. "Principles of estoppel do not apply . . . and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings." Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982).

Although defendants seek dismissal of Altissima's claims on the merits as well as for lack of subject matter jurisdiction, I cannot reach the merits unless I first conclude that subject matter jurisdiction exists. "The obligation that courts must resolve threshold questions of jurisdiction . . . before proceeding to consider the merits of a claim at any stage of a proceeding is 'inflexible and without exception'." Antwi v. United States, 349 F. Supp. 2d 663, 669 (S.D.N.Y. 2004) (*quoting* Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 95 (1998)).

In deciding this question, I must bear in mind the "fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress". Durant, Nichols, Houston, Hodgson & Cortese - Costa P.C. v. Dupont, 565 F. 3d 56, 62-3 (2d Cir. 2009). Therefore, I must

"scrupulously confine [my] jurisdiction to the precise limits which a federal statute has defined". Victory Carriers, Inc. v. Law, 404 U.S. 202, 212 (1971).

Altissima bases its claim to subject matter jurisdiction upon 28 U.S.C. §1332(a)(2). Amended Complaint [85], ¶18. Altissima alleges that it is "a corporation organized and existing under the laws of the British Virgin Islands"( id., ¶3)[2], and that "all defendants are citizens of different states"(id., ¶18). However, it is undisputed that defendant One Niagara is a limited liability company whose members include Incredible Investments Limited ("Incredible Investments"), which is also a British Virgin Islands company. Grenga Declaration [172], Ex. A.

While Altissima argues that "it is far from settled as a matter of federal jurisprudence that a limited liability company takes on its members' citizenship for diversity purposes" (Altissima's Memorandum of Law [177], p.1), that issue is not "far from settled" in the Second Circuit. "For purposes of diversity jurisdiction, a limited liability company has the citizenship of its membership." Handelsman v. Bedford Village Associates Ltd. Partnership, 213 F.3d 48, 51-2 (2d Cir. 2000).

Altissima concedes that if I apply the rule in Handelsman - as I must - then "there is not complete diversity of citizenship among the parties to the case", since "Altissima, the plaintiff, and the defendant, One Niagara, are both British Virgin Island citizens". Transcript of oral argument [176], p. 4. This poses a problem which I may not ignore, since §1332(a)(2)

---

[2] The British Virgin Islands meet the definition of a "foreign state" within the meaning of §1332(a)(2). See JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd., 536 U.S. 88, 90 (2002).

requires complete, not partial, diversity.[3] "The general rule requiring complete diversity between opposing parties is explicit and unequivocal . . . . Clearly, this rule applies in cases where aliens appear on both sides of a case". International Shipping Co., S.A. v. Hydra Offshore, Inc., 875 F.2d 388, 391 (2d Cir.1989), cert. denied, 493 U.S. 1003 (1989).[4] Thus, it is well settled that "diversity jurisdiction does not exist . . . where on one side there are citizens of a State and aliens and on the opposite side there are only aliens". CP Solutions PTE, Ltd. v. General Electric Co., 553 F.3d 156, 158 (2d Cir. 2009). *See also* Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC, 232 F.3d 79, 82 (2d Cir. 2000) (where aliens "are present on both sides of the dispute", then "diversity jurisdiction is lacking").

Altissima asks that I cure the lack of jurisdictional by dropping One Niagara from the action. Altissima's Memorandum of Law [166], p. 16, *quoting* Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989) ("it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered"), and Caspary v. Louisiana Land and Exploration Co., 725 F. 2d 189, 191 (2d Cir. 1984) ("district courts considering cases in which they lack jurisdiction because of the presence of a non diverse party can grant an amendment to drop the party and create complete diversity").

---

[3] Altissima argues that "in this case there was at least 'minimal diversity' . . . existing between the parties at the outset of the action". Altissima's Memorandum of Law [177], p. 5. This argument is unavailing, for while certain other jurisdictional statutes require only minimal diversity (*see, e.g.*, 28 U.S.C. §§1332(d) (class actions) and 1335 (interpleader)), §1332(a)(2) has always been interpreted to require complete diversity.

[4] "Aliens" is an "abbreviated reference[ ] to the more ponderous phrase, 'foreign states or citizens or subjects thereof' appearing in Section 1332(a)(2)." Blair Holdings Corp. v. Rubinstein 133 F.Supp. 496, 500 (S.D.N.Y. 1955).

While these statements certainly seem to support Altissima's position, that is not what the court actually decided in either of those cases. Although the Court in <u>Newman-Green</u> mentioned the authority of district courts to drop parties in order to resolve a jurisdictional problem, what it actually decided was not a what a district court can do, but what a court of appeals can do: "We decide today that a court of appeals may grant a motion to dismiss a dispensable party whose presence spoils statutory diversity jurisdiction." 490 U.S. at 827.

The same is true for <u>Caspary</u>: what the Second Circuit actually decided was not what a district court can do, but what a court of appeals can do. In fact, in that case the district court *did* have subject matter jurisdiction from the outset, and the sole issue for determination was whether the Second Circuit itself "may allow a plaintiff-appellant to amend his complaint to delete his remaining untried claims in order to vest [the Second Circuit] with jurisdiction [over the appeal] pursuant to 28 U.S.C. §1291". 725 F. 2d at 190.

However, I am obligated to follow "the holdings of . . . cases, rather than their dicta". <u>Kokkonen v. Guardian Life Ins. Co. of America</u> 511 U.S. 375, 379 (1994). Dicta "may be followed if sufficiently persuasive but [is] not binding." <u>Central Green Co. v. United States</u>, 531 U.S. 425, 431 (2001). The reason for this rule "is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." <u>Humphrey's Executor v. United States</u>, 295 U.S. 602, 627 (1935). Therefore, if "general expressions, in [an] opinion . . . go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the

very point is presented for decision." Central Virginia Community College v. Katz, 546 U.S. 356, 363 (2006).

The question before me is this: what may a district court do where, as here, diversity jurisdiction "is lacking" (Creaciones, supra) because it "does not, in fact, exist" (Newman-Green, supra, 490 U.S. at 831). While discussed in Newman-Green, that question was neither actually decided nor "completely investigated" (Humphrey's Executor, supra) by the Court in that case.

The starting point for answering that question is the Rules themselves, which according to Rule 1 "govern the procedure in all civil actions and proceedings in the United States district courts". The Court in Newman-Green focused upon the "policies informing" the Rules, rather than upon the actual Rules: "Although the Federal Rules of Civil Procedure strictly apply only in the district courts . . ., the policies informing Rule 21 may apply equally to the courts of appeals." 490 U.S. at 832. However, unlike a court of appeals - to whom the Rules do not apply - a district court may not ignore the Rules. "Courts enforce the requirement of procedural regularity on others, and must follow those requirements themselves." Hollingsworth v. Perry, 130 S.Ct. 705, 706 (2010).

Where the text of the Rules is clear, I cannot look to the "policies informing" that text in order to reach a different result. "We give the Federal Rules of Civil Procedure their plain meaning . . . . Our inquiry is complete if we find the text of the Rule to be clear and unambiguous." Business Guides, Inc. v. Chromatic Communications Enterprises, Inc. 498 U.S. 533, 540-41(1991). "The text of a rule . . . limits judicial inventiveness", Amchem Products, Inc.

v. Windsor, 521 U.S. 591, 620 (1997), and courts "have no power to rewrite the Rules by judicial interpretations". Harris v. Nelson 394 U.S. 286, 298 (1969).

Rule 12(h)(3) - which was not even mentioned (much less discussed) in Newman-Green - states that "'if the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action.'" Cave v. East Meadow Union Free School District, 514 F. 3d 240, 250 (2d Cir. 2008) (emphasis in original). Because the Rule states that I "must" dismiss the case, I may not do anything but that. International Video Corp. v. Ampex Corp., 484 F. 2d 634, 636 (9th Cir.1973) ("Rule 12 dismissals for lack of jurisdiction are non-discretionary").

Rule 21 ("Misjoinder and Nonjoinder of Parties"), which was discussed in Newman-Green, does not allow me to avoid my obligation to dismiss the action, as commanded by Rule 12(h)(3). Because "no single Rule can . . . be considered in a vacuum", Tancredi v. Metropolitan Life Ins. Co., 378 F. 3d 220, 227 (2d Cir. 2004), Rule 21 must be interpreted in light of Rule 82 , which clearly states that "these rules do not extend . . . the jurisdiction of the district courts".[5]   "It is axiomatic that such rules do not create or withdraw federal jurisdiction." Kontrick v. Ryan, 540 U.S. 443, 453 (2004). Instead, "the rules merely prescribe the method by which the jurisdiction granted the courts by Congress is to be exercised". Id. at 453. Therefore, "the Rules do not provide an independent ground for subject matter jurisdiction over an action

---

[5] The dissenters in Newman-Green (Justices Kennedy and Scalia) noted the problem created by the interplay between Rules 21 and 82: "It is disturbing that the Court does not address in a substantive way the grave, brooding question whether Federal Rule of Civil Procedure 21 affords even the district courts the power to confer jurisdiction retroactively by dismissing a nondiverse party . . . . It is questionable whether relying on Rule 21 is consistent with Rule 82's clear admonition." 490 U.S. at 839, 840. While they subsequently joined the majority in Grupo Dataflux in describing the use of Rule 21 to create jurisdiction as "well settled", 541 U.S. at 572-73, that statement too was dicta, because what the Court actually decided in Grupo Dataflux is that a postfiling change in the plainitff's citizenship cannot cure a defect in diversity jurisdiction.

for which there is no other basis for jurisdiction". Cresswell v. Sullivan & Cromwell, 922 F. 2d 60, 70 (2d Cir.1990).

Accordingly, notwithstanding Newman-Green's dicta, I may not resort to Rule 21 to drop a party and thereby create jurisdiction which does not exist. *See* Chao v. Russell P. Le Frois Builder, Inc., 291 F. 3d 219, 229 (2d Cir. 2002) ("to use [a] Rule . . . to *establish* jurisdiction would be to bootstrap jurisdiction into existence") (emphasis in original).

I recognize that some courts treat Newman-Green's statement (as to district courts' authority to use Rule 21 to cure a jurisdictional defect) as binding precedent rather than dicta. However, if it *is* binding precedent, then it runs headlong into another line of binding precedent which is "reflected in a long and venerable line of our cases. 'Without jurisdiction the court cannot proceed *at all* in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the *only* function remaining to the court is that of announcing the fact and dismissing the cause.'" Steel Company, supra, 523 U.S. at 94 (*quoting* Ex parte McCardle, 7 Wall. 506, 514 (1868)) (emphasis added). "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." Steel Company, supra, 523 U.S. at 94-5.

This competing line of precedent is also recognized in more recent decisions of the Court. "Either the court has jurisdiction at the time the defect is identified (because the parties are diverse at that time) or it does not . . . . If the former, then dismissal is inappropriate; if the latter, then retention of jurisdiction . . . is inappropriate." Grupo Dataflux, supra, 541 U.S. at 576. "Once a court determines that jurisdiction is lacking, it can proceed no further and must

dismiss the case on that account." Sinochem International Co. Ltd. v. Malaysia Intern. Shipping Corp., 549 U.S. 422, 434 (2007).

Because these two lines of precedent are irreconcilable, I cannot follow both. Therefore, I must choose the one which I believe to be more consistent with established Constitutional principles. "Stare decisis is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience." Helvering v. Hallock, 309 U.S. 106, 119 (1940); Stout v. International Business Machines Corp., 798 F. Supp. 998, 1001, 1007 (S.D.N.Y. 1992) (when confronted with "an irreconcilable conflict in Supreme Court authority", a district court should follow that authority which "more closely adheres to the traditional view"). Therefore, if I must choose between these two lines of precedent, I choose to believe that Rule 12(h)(3) means what it says, and that absent subject matter jurisdiction, I "can proceed no further and must dismiss the case on that account". Sinochem, supra.

Even if I were to resort to Rule 21 in order to dismiss a party so as to create complete diversity, I could do so only as to a "*dispensable* nondiverse party". Newman-Green, supra, 490 U.S. at 832. However, Altissima admits that "One Niagara is an indispensable party". Transcript of oral argument [176], p. 5; Altissima's Memorandum of Law [166], p. 16. Altissima suggests that I may convert One Niagara from an indispensable party to a dispensable party by *first* allowing an amendment of the complaint to dismiss the foreclosure cause of action, and *then* treating One Niagara as a dispensable party. Altissima's Memorandum of Law [177], p.

-11-

12 ("dismissing One Niagara as a defendant would only require the additional change of dismissing the foreclosure cause of action").

That is placing the cart before the horse. It was Altissima's decision to amend its original Complaint, and defendants were "willing to consent to the filing . . . . Such consent was freely given". Defendants' Memorandum of Law [179], unnumbered p. 7. Therefore, the existence of subject matter jurisdiction must be determined by reference to the allegations of the Amended Complaint, rather than the original Complaint. "When a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." Rockwell International Corp. v. United States, 549 U.S. 457, 473-74 (2007).

Since the allegations of the Amended Complaint make One Niagara an indispensable party, I lack the power to grant another amendment of the complaint to drop the claims as to which it is indispensable. "I cannot allow plaintiff to amend [its] complaint in an effort to establish jurisdiction retroactively". Broad v. DKP Corp.,1998 WL 516113, *2 (S.D.N.Y. 1998), aff'd 182 F. 3d 898 (2d Cir. 1999); Asset Value Fund Ltd. Partnership v. The Care Group, Inc., 179 F.R.D. 117, 119 (S.D.N.Y.1998) ("if there is not federal jurisdiction, it cannot be created by amendment"); 3 Moore's Federal Practice (Third Ed. 2009), §15.14[3].

Even if I had that power, I would not exercise it in this case. The deadline for further amendments of pleadings under my Case Management Order was August 10, 2009 [79, ¶2], yet Altissima did not move to amend its Amended Complaint until December 31, 2009. Altissima's Memorandum of Law [177], p, 10. "Once the deadline for amendment in a scheduling order has passed, leave to amend may be denied where the moving party has failed to

establish good cause" for failing to move prior to the deadline. Presbyterian Church Of Sudan v. Talisman Energy, Inc., 582 F. 3d 244, 267 (2d Cir. 2009). "A finding of good cause depends on the diligence of the moving party." Id.

Altissima argues that "the issue of subject matter jurisdiction was first raised in the defendants' motion for summary judgment on November 30, 2009 (as expanded by them on December 23, 2009) and Altissima promptly made this motion to amend the complaint to cure the newly discovered jurisdictional defect on December 31, 2009, thus demonstrating sufficient diligence for a finding of good cause". Altissima's Memorandum of Law [177], p.10. However, the jurisdictional problem should have been obvious to Altissima from the outset of this case, since its director, David Ho, was also principal in Incredible Investments [33, Ex. D and 151-4, Ex. J]. Therefore, Altissima did not have a legitimate reason for failing to move within the deadline established by the Case Management Order. "Strict enforcement of the good cause requirement of Rule 16 may seem like unnecessarily strong medicine. But if the courts do not take seriously their own scheduling orders who will?" Carnrite v. Granada Hospital Group, Inc., 175 F.R.D. 439, 448 (W.D.N.Y. 1997) (Arcara, J./Foschio, M.J.).

Having concluded that complete diversity of citizenship (and, therefore, subject matter jurisdiction) is lacking, I have no choice but to recommend that this court obey the command of Rule 12(h)(3) by dismissing the complaint. That dismissal should be without prejudice, since "where a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice". Hernandez v. Conriv Realty Associates, 182 F. 3d 121, 123 (2d Cir. 1999).

B. **Other Relief**

1. **Relief Requested by Altissima**

Altissima suggests that even if this case is dismissed for lack of subject matter jurisdiction, its "multiple pending sanction motions" may still be decided. "The law is clear that a district court has authority to impose litigation-related sanctions notwithstanding the lack of subject matter jurisdiction". Altissima's Memorandum of Law [166], p. 18, n. 3 (citing Willy v. Coastal Corp., 503 U.S. 131, 139 (1992) and Hernandez, supra, 182 F. 3d 121).

However, Willy involved a sanction issued pursuant to Rule 11, and it is unclear whether its rationale would also apply to Altissima's request for discovery sanctions under Rule 37. *Compare* McCook Metals LLC v. Alcoa, Inc., 249 F. 3d 330, 334 (4th Cir. 2001) ("Rules 37 and 45 do not confer subject matter jurisdiction upon the courts") *with* In re Exxon Valdez, 102 F. 3d 429, 431 (9th Cir.1996) ("the sanctions imposed here under Rule 37 were collateral to the merits of the actions, just as the Rule 11 sanctions were in Willy").

What is clear, however, is that absent subject matter jurisdiction, I may not grant a default judgment or alter the burden of proof as a discovery sanction, as requested by Altissima (*see* Altissima's Reply Memorandum of Law [134], p. 7). "Where a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice. It is true that such an order, if imposed as a procedural sanction, does not involve an assessment of the merits of the case. Nevertheless, we believe that Article III's limits on federal jurisdiction are designed not only to prevent federal courts from assessing the merits of certain disputes, but also to prevent federal courts from interfering - through such assessments *or otherwise* - with the jurisdiction of state courts over certain cases, such as this one, that do not implicate federal interests." Hernandez, supra, 182 F. 3d at 123 (emphasis in original).

-14-

Nor may I grant Altissima's motion for contempt for disobedience of a subpoena [143]. "The subpoena power of a court cannot be more extensive than its jurisdiction. It follows that if a district court does not have subject-matter jurisdiction over the underlying action, and the process was not issued in aid of determining that jurisdiction, then the process is void and an order of civil contempt based on refusal to honor it must be reversed." United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76 (1988).

What is left, then - assuming that Rule 37 gives me *any* authority in the absence of subject matter jurisdiction (a proposition as to which I have my doubts - *see* Rule 82) - is the ability to impose a monetary penalty or an award of attorney's fees. The decision as to whether sanctions are warranted under Rule 37 is committed to the court's "wide discretion". Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine 951 F. 2d 1357, 1365 (2d Cir. 1991).

It is quite clear to me that defendants were guilty of at least some "foot dragging" in discovery, such as their failure to produce electronic discovery in native format, and their cancelling depositions without prior notice to Altissima. However, the decision as to whether or not to impose a sanction "must be weighed in light of the full record in the case", Daval Steel, supra, 951 F. 2d at 1363, and the fact remains that this case never should have been commenced in the first place, because complete diversity was lacking - a fact which Altissima either knew or reasonably should have known. The result has been tremendous waste not only of the parties' time and expense, but of the court's time as well.

Therefore, to the extent that this court has authority to impose a sanction under Rule 37, I exercise that discretion by refusing to impose a sanction in favor of Altissima.[6]

---

[6] In Kiobel v. Millson, 2010 WL 46785 (2d Cir. 2010), the Second Circuit has expressed uncertainty as to whether a magistrate judge is authorized to impose Rule 11 sanctions. Whether that

### 2. Relief Requested by Defendants

Defendants request an award of costs and attorneys' fees in connection with the dismissal of the case. However, notwithstanding the absence of subject matter jurisdiction, defendants' cavalier attitude toward their discovery obligations, coupled with their failure to raise the jurisdictional problem at the outset of the case, make them undeserving of an award of costs or attorney's fees. For these reasons, together with those discussed above, I exercise my discretion (or recommend that Judge Skretny exercise his) not to make any such award.

### CONCLUSION

In view of the tremendous expenditure of time and expense which has occurred to date, I do not lightly recommend that this case be dismissed. Nevertheless, I am constrained by the rule that "although an exercise of judicial power may be desirable or expedient, a suit may not proceed absent statutory authorization". Achtman v. Kirby, McInerney & Squire, LLP 464 F. 3d 328, 333 (2d Cir. 2006).

"The age-old rule that a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists has always worked injustice in particular cases. Parties often spend years litigating claims only to learn that their efforts and expense were wasted in a

---

uncertainty also applies to Rule 37 sanctions is unclear. If I lack the authority to decide the question on my own, then my decision on this question should be treated as a recommendation to Judge Skretny.

court that lacked jurisdiction . . . . Such situations inhere in the very nature of jurisdictional lines." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 818 (1988).

Regardless of the consequences, I recognize that "much more than legal niceties are at stake here. The statutory . . . elements of jurisdiction are an essential ingredient of separation and equilibration of powers." Steel Company, supra, 523 U.S. at 101. "In the light of [the] overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of this important dispute and to settle it for the sake of convenience and efficiency." Raines v. Byrd, 521 U.S. 811, 820 (1997).

For these reasons, I recommend that defendants' motion to dismiss [151] be granted to the extent that requests dismissal of the Amended Complaint (without prejudice) for lack of subject matter jurisdiction but otherwise be denied, and that Altissima's motion to dismiss defendant One Niagara LLC and to further amend the Amended Complaint [161], as well as its motions for sanctions and an order of contempt [65, 119, 143] be denied. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within 14 days after receipt of a copy of this Report and Recommendation.

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.  <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.</u>

**SO ORDERED**

DATED:　　February 8, 2010

　　　　　　　　　　　　　　　　　　　　　　　　/s/ Jeremiah J. McCarthy
　　　　　　　　　　　　　　　　　　　　　　　　　JEREMIAH J. MCCARTHY
　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge